[Crim. No. 3473. In Bank.—January 16, 1932.]

THE PEOPLE, Respondent, v. FRANK FRANCO, Appellant.

No appearance for Appellant.

U. S. Webb, Attorney-General, Fred L. Thomas, District Attorney, and C. C. Cottrell, Assistant District Attorney, for Respondent.

THE COURT.—The defendant, a southern European, and unable to speak the English language, was charged by information with the crime of having murdered one Antone Andrade on January 20, 1931. The defendant pleaded not guilty and not guilty by reason of insanity. As provided by law the defendant was first tried on the issue made by his plea of not guilty. The jury returned a verdict of guilty of murder in the first degree, without recommenda-

tion. The same jury subsequently found the defendant sane. Under such circumstances the trial court imposed the penalty of death, as is made mandatory in such cases. Defendant subsequently perfected an appeal to this court. His counsel has not seen fit to file any brief on his behalf. Inasmuch as the extreme penalty of the law has been imposed on the defendant, the court of its own volition, without assistance from counsel, has thoroughly examined the entire record. Upon such examination it is apparent that the evidence is such as to support the verdict, and that no legal right of the defendant was invaded during the trial.

The evidence shows that on the day of the homicide the defendant, together with the deceased and four others, was engaged in pruning a vineyard on the Batacabe ranch, three miles from Morgan Hill, in Santa Clara County. During the lunch hour the deceased and one Salvadore Francho, nephew of the defendant, ate their lunch while seated on the running-board of Salvadore's automobile, a Dodge truck, parked on a narrow roadway leading into the ranch. Defendant's automobile was parked on the other side of the road, and defendant ate his lunch, alone, in his car. During the lunch hour Andrade, the deceased, sharpened his pruning shears, one large pair and a smaller pair, and laid the same upon the running-board beside him. According to Salvadore, a witness called by both sides, the following then occurred: After defendant had finished his lunch he crossed the roadway to where Andrade and Salvadore were sitting and engaged them in conversation. The witness testified that defendant first asked Andrade why he would not lend him the sum of five dollars. Andrade replied that he could not lend it to him because he did not have it. The defendant replied that Andrade did have that sum but would not lend it to him. The parties proceeded to argue concerning this matter and Salvadore sought to interfere. He was told by defendant to keep quiet. Defendant then asked Andrade why he, Andrade, would not permit the defendant to board with him. Andrade replied that it made too much trouble. The defendant and Andrade then got into an argument on this point, during the course of which defendant stated that Andrade was just like all the other Spaniards at Morgan Hill; that they all treated him, the defendant, "like a dog"; that he,

the defendant, "was going to finish all the Spanish people at Morgan Hill" and again, "Yes, you [Andrade] are the same; I have got to finish all this up." After some further argument defendant challenged Andrade to fight. Andrade replied, "I will fight you, hand by hand." All during this conversation the deceased remained seated on the running-board of the Dodge truck, according to Salvadore, who was standing near the front fender of the truck. The defendant was standing near the rear fender and slightly in front of deceased. Upon Andrade saying he would fight, defendant reached for his right-hand back pocket. The witness was so standing that he could see the handle of a gun protruding from the pocket. Andrade said, "What are you doing, drawing your gun?" Defendant replied that he "just had a little knife". Andrade, still seated, said, "You are not fighting fair; why don't you fight like a man?" Defendant then stated, "I will start with you," and drew his gun and fired three shots at Andrade, one hitting him in the right arm and one in the left leg, and one missing, both of the wounds being superficial flesh wounds. According to the witness, who was not impeached in any way, the deceased was still seated on the running-board when the shots were fired. Andrade, after being wounded, stated: "What are you shooting at? Wait, I will get gun," and started to get up. He took two steps toward defendant; the latter backed up a step or two and fired the fourth shot, which hit Andrade in the forehead, from the results of which he shortly died. Defendant thereupon jumped in his car and drove away to a cabin about two miles from Morgan Hill. Here he was arrested a short time later by the constable who found him lying on a bed with his throat and abdomen badly slashed with a knife, evidently in a futile attempt to commit suicide.

The defendant not only admitted to several officers that he fired the fatal shot, but at the time of trial took the stand in his own defense, and admitted firing the shots. The story told by defendant only differs materially from that told by Salvadore in that he contended that the deceased provoked the fight, and started after him with the pruning shears; that he, the defendant, was then unarmed; that he rushed across the road to his car and got his gun from the side pocket and shot in self-defense; that when he shot

Andrade the pruning shears the latter was flourishing as a weapon fell under him. This story not only is contradicted by that of the eye-witness, Salvadore, but is contradicted by certain other evidence. The position in which the body of Andrade was found makes it very improbable that if Andrade was attacking defendant with the pruning shears that Andrade would only have taken about two steps from the Dodge truck (where the body fell, even according to the story of defendant) while defendant rushed across the road, opened the door of his car, got the gun, turned and shot. Salvadore testified that at no time during the argument did Andrade place his hands upon the pruning shears; that after the shooting he, Salvadore, got into the truck and drove to get help; that he secured the assistance of one Emil Kettleson, another laborer at the Batacabe ranch. The latter testified that after taking Andrade to a doctor in Morgan Hill he returned to the ranch and found both pairs of pruning shears a considerable distance from the scene of the homicide, and in such a position that they very evidently had dropped from the running-board of the Dodge truck when Salvadore went for help. Salvadore testified, as did Kettleson, that the pruning shears were not under Andrade's body when they removed him.

█ Upon such a state of the record there can be no doubt of the correctness of the jury's verdict on the guilt issue. We have carefully examined the trial court's charge to the jury and find it fair and complete in all respects.

Little need be said on the question of sanity. Upon defendant pleading not guilty by reason of insanity the trial court, pursuant to section 1027 of the Penal Code, appointed. Dr. Muller, assistant superintendent of the state hospital at Agnew, and Dr. Baiocchi, whose qualifications were stipulated to, as alienists. Defendant produced these two men and Dr. Proescher as his only witnesses on the trial of the sanity issue. All three gave it as their unqualified opinion that defendant was sane when examined, and that no evidence of prior insanity was present. The jury's verdict of sanity was justified on their testimony alone.

For the foregoing reasons the judgment and order appealed from must be and each hereby is affirmed.